# CARDENAS & ASSOCIATES
a law office

**J. Roberto Cardenas**

Of Counsel:
Raymond E. Villanueva

International of Counsel
Ricardo F. Villarraga
Hernan Astorquiza
Alfredo Sanabria

Staff:
G. Matthew Pirner
Natalia Berrino

VIA ECF

December 8, 2008

Hon. Denise L. Cote
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl St., Room 1040
New York, NY 10007-1312

Re: United States v. Vargas-Cuenca S4 05 Cr. 1262 (DLC)

Dear Judge Cote:

I am the attorney for defendant Yesid Vargas-Cuenca and offer this letter to the Court on his behalf to assist in determining the appropriate sentence that should be imposed upon him. By now providing additional meaningful information, which was not touched upon in the Pre-sentence report, prepared on November 7, 2008, this Court will have considerable basis for the imposition of the specific sentence urged herein.

Mr. Vargas-Cuenca stands before this Court for sentencing approximately twenty-eight months after having been arrested. Factoring in good time, Mr. Vargas Cuenca has served the equivalent of thirty-four months. Based on the information set forth below, it is respectfully submitted that the most appropriate sentence this Court could impose upon Mr. Vargas-Cuenca should be a sentence of time served. This Court may impose such a sentence by (1) calculating the relevant Guidelines range; (2) consider the calculated Guidelines range, along with the other §3553(a) factors; and (3) imposing a reasonable ***non-guidelines*** sentence.

119 W 57th Street    Suite 1215    New York NY 10019    T: 212.977.7095    F: 212.977.7085

info@jrc-esq.com

BASIS FOR THE REQUESTED SENTENCE

MR. VARGAS-CUENCA WAS A MINOR PARTICIPANT

In his plea Mr. Vargas-Cuenca accepted the government's calculation that he was a level 38 based on the quantity of drugs minus the benefit of 2 points pursuant to the "safety valve" provision and minus 3 points for his timely acceptance of responsibility. Thus the guidelines level that the government believes is appropriate to predicate Mr. Vargas-Cuenca's sentence is a level 33.

In his negotiations with the government, Mr. Vargas-Cuenca specifically requested an opportunity to argue that he was no more than a minor participant in what this Court now knows to be a large conspiracy to import drugs into the United States. He has always maintained that he is guilty of blatant stupidity and has accepted his responsibility for his actions, albeit minor, in assisting his life long friend, Mr. Molina-Triana, to traffic drugs. But he strenuously maintains that he was nothing more than a minor participant in this scheme and all the facts in this case support his position. Most importantly, examination of the facts pursuant to the law of this circuit leads to the same conclusion.

Mr. Vargas-Cuenca and Mr. Molina-Triana had been friends for more than twenty years having met at the Police Academy as cadets. In the intervening years they remained friends and when Mr. Vargas-Cuenca was forcefully retired from the Colombian Police[1], he entered into a legitimate business with Mr. Molina-Triana. They became partners in a casino on or about the end of December 2005, with Mr. Vargas-Cuenca assuming the role of manager at the casino. As such, he met and interacted with Mr. Molina-Triana on a daily basis because, aside from the fact that Mr. Vargas-Cuenca worked there daily, Mr. Molina-Triana was always conducting business at the casino or at the adjacent restaurant. The problem was that apparently, Mr. Molina-Triana's casino was his secondary business

---

[1] Mr. Vargas-Cuenca witnessed a bribe being paid to an extremely high ranking official in the Colombian Police after which he became the target of numerous accusations that ultimately led to his being retired. He demanded an inquiry into the basis of these accusations and the departmental inquiry into the same ultimately exonerated him from any wrongdoing. (See the original report and its official translation annexed hereto as Exhibit "A")

while the coordination and activities of his narcotics trafficking, as the evidence in this case has clearly demonstrated, was his primary concern. This became the downfall for Mr. Vargas-Cuenca.

Apparently Mr. Molina-Triana was coordinating the transport of 1700 kilos during Mr. Vargas-Cuenca's tenure at the casino and he spent his days involved in the coordination and execution of the same. According to the evidence produced by the government, he was coordinating the efforts of ex-police officers, current police officers and airline employees to ensure the transportation of major drug shipments. Unfortunately, much of this activity was taking place as he worked side by side with Mr. Vargas-Cuenca and on various occasions he asked Mr. Vargas-Cuenca to accompany him to meetings and/or accomplish various tasks for him. Although Mr. Vargas-Cuenca was present at various meeting, Mr. Molina-Triana would always ask him to move away when they began to discuss sensitive topics presumably to maintain security since Mr. Vargas-Cuenca was not part of the trafficking operation.

At his request, Mr. Vargas-Cuenca delivered money for Mr. Molina-Triana twice, once to him directly in Cali and once to Mr. Suarez-Pedraza in Bogota. At some point Mr. Molina-Triana asked Mr. Vargas-Cuenca to store $150,000.00 in the casino safe that Mr. Vargas-Cuenca knew to be the earnings from drug trafficking. Thereafter Mr. Vargas-Cuenca distributed part of that money knowing that he was participating in Mr. Molina-Triana's narcotics conspiracy.

It was part of that money that was delivered to Mr. Suarez-Pedraza as mentioned above. Mr. Vargas-Cuenca and Mr. Suarez-Pedraza had also been friends for many years by virtue of their time together in the Colombian Police. At the time that he delivered the money he did not know what the money was intended to accomplish other than it was intended to further Mr. Molina-Triana's narcotics activities.[2] He brought food to individuals at Mr. Molina-Triana's request. **He received no**

---

[2] Mr. Vargas-Cuenca was charged with knowingly bribing Colombian Police officers with the money delivered to Mr.

*compensation, beyond his compensation as a partner at the casino, for any of the above-mentioned activities.*

Lastly, he became aware that at one point that Mr. Suarez-Pedraza was storing a large quantity of drugs in his apartment and he threatened Mr. Suarez-Pedraza that if he did turn over the drugs to law enforcement on, or before noon, of the following day, Mr. Vargas-Cuenca was going to turn him in. Mr. Vargas-Cuenca has fully accepted responsibility for aforementioned actions.

In its sentencing submission the government has set forth the following as Mr. Vargas-Cuenca's activities that form the basis for it to argue that he is not a minor participant:

- Vargas made drug money deliveries on behalf of Molina-Triana to locations in Bogota and Cali, on two to three occasions. (Tr. 250, 439-440);

- In March 2006, at the request of Molina-Triana, Vargas transported drug money to Suarez-Pedraza that he (Vargas) had stored at his home so that the money could be given as a bribe payment to police officers who had intercepted a load of cocaine. (Tr. 278-79, 446);

- Vargas was present outside of the warehouse during unloading of shipments of cocaine into the warehouse where it was stored and packaged. (Tr. 429, 446);

- Vargas assisted in obtaining cocaine packaging supplies and food which he delivered to co-conspirators, both at the warehouse location and the apartment location, who were packaging cocaine. (Tr. 289-90).

With the exception of storing any monies at his home which is completely untrue, the facts asserted by the government mirror the facts set forth by Mr. Vargas-Cuenca, and pursuant to the law of this circuit, these activities do not rise to the level of anything more than a minor participant in the overall conspiracy to import more than 2000 kilos of cocaine into the United States.

Under Sentencing Guideline § 3B1.2, a defendant who was a "minor participant" in the

---

Suarez-Pedraza. He vehemently refuted this allegation and demanded an inquiry into the basis of these accusations and the departmental inquiry into the same ultimately exonerated him from any wrongdoing. (See the original report and its official translation annexed hereto as Exhibit "B")

charged criminal activity is entitled to a two-level reduction in the otherwise applicable offense level, and a "minimal participant" is entitled, to a four-level reduction. See United States Sentencing Guidelines Manual § 3B1.2 (2003) ("U.S.S.G."). The defendant bears the burden to prove by a preponderance of the evidence that he is entitled to a § 3B1.2 adjustment. See United States v. Carpenter, 252 F.3d 230, 235 (2d Cir. 2001).

These adjustments are intended for a defendant "who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. 3(A). A "minimal participant" is a defendant who is "plainly among the least culpable of those involved;" the Sentencing Commission contemplated that this adjustment would "be used infrequently." Id. cmt. 4. A "minor participant" is one "who is less culpable than most other participants, but whose role could not be described as minimal." cmt. 5.

In a drug conspiracy case the Court must evaluate "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." United States v. Garcia, 920 F.2d 153, 155 (2d Cir. 1990). Thereafter, the Court must consider whether, taking these factors into account, the defendant is substantially less culpable than the average participant in a similar conspiracy of the magnitude that determines the base offense level. See United States v. Ruiz, 246 F. Supp.2d 263, 270 (S.D.N.Y. 2002); see also United States v. Aimal, 67 F.3d 12, 18 (2d Cir. 1995) (holding that the relevant inquiry is whether defendant "played a minor role in comparison to the average participant in such a drug crime"). In other words, the issue here is whether his role was minor or minimal in a more general comparative context in relation to a typical conspiracy to distribute and possess with intent to distribute more than 2000 kilograms of cocaine. Clearly, it was.

This was a massive operation involving ex-police, current police and airline employees.

Mr. Vargas-Cuenca had virtually no prior knowledge of, or other relationship to, the conspiracy except that he was Mr. Molina-Triana's partner at the legitimate casino. He had never previously been involved in any criminal activity of any kind. He did not know what kinds of drugs or how much were being negotiated as he was specifically prevented from participating in the same.

Assuming all of the government's facts are true he was a gopher for Mr. Molina-Triana who received no compensation for his acts. He met the majority of his co-defendants for the first time while he was housed at Combita Penitentiary in Colombia awaiting extradition to the United States. Therefore he had no relationship to most of the other participants in the charged conspiracy. Garcia, 920 F.2d 153 at 155. He had absolutely no part in organizing or controlling the manufacture of over two thousand kilos of cocaine, the transportation of the same to the airport, it's loading onto the international shipment vehicles, it's receipt anywhere, and it's price point wherever it arrived.

Since Mr. Vargas-Cuenca had absolutely no decision-making authority or influence over the conspiracy in which he briefly involved himself, he was clearly completely "replaceable," United States v. Sanchez, 925 F. Supp. 1004, 1013 (S.D.N.Y. 1996), and obviously of very little importance to the success of the conspiracy because anyone could have done what he did on behalf of Mr. Molina-Triana. Garcia, 920 F.2d 153 at 155; Ruiz, 246 F. Supp.2d at 272.

Accordingly, this Court should find that Mr. Vargas-Cuenca was no more than a minor participant in the conspiracy for which he has accepted responsibility and factor into its sentencing consideration that he should be no more than a guidelines level 27. This level is achieved by reducing Mr. Vargas-Cuenca's level of 38, (based on the quantity of drugs) by four points pursuant to U.S.S.G. §2D1.1(a)(3) and by two additional points pursuant to U.S.S.G. § 3B1.2. Then subtracting the five points contemplated by the plea for both, acceptance of responsibility as well as the "safety valve," yields a level 27 which dictates a sentencing range of 70-87 months.

## THIS COURT'S POST BOOKER SENTENCING AUTHORITY

Until the Supreme Court's decision, in the <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738(2005), this Court was constrained to impose sentences which were strictly dictated by the Sentencing Guidelines. After this decision the Guidelines became exactly what they were intended to be, *guidelines*, and this Court once again has the discretion to sentence a defendant to what is appropriate in light of factors not necessarily quantified by the guidelines.

The Second circuit enunciated the sentencing practice that it intended this district to follow shortly after the decision was handed down in <u>Booker</u>. In the <u>United States v. Crosby</u>, 397 F.3d 103 (2nd Cir. 2005), the Court wrote:

> Thus, at this point, we can identify several essential aspects of Booker/Fanfan that concern the selection of sentences. First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in §3553(a). Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in §3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence. Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence. Id. at 113.

This sentencing scheme was clarified in the recent case of the <u>United States v. Fernandez</u>, 443 F.3d 19(2nd Cir. 2006), in which the Circuit Court unequivocally included any applicable departure under the guidelines system as part of a District Court's sentencing range calculation. Id. at 26.

By the terms of the plea, Mr. Vargas-Cuenca cannot, and therefore does not, request a downward departure. But in accordance with this district's sentencing scheme, this Court must consider whether any basis exist for a downward departure from the otherwise applicable level of 27. Therefore,

Mr. Vargas-Cuenca is asking that this Court impose upon him a **non-Guidelines** sentence of time served.[3]

In arriving at a reasonable non-guidelines sentence this Court must consider in the factors set forth in §3553(a). USC §3553(a) provides in pertinent part as follows:

(a) Factors to be considered in imposing a sentence.--

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines;] ...

(5) any pertinent policy statement ... issued by the Sentencing Commission ...;

---

[3] A non guidelines sentence is defined by the Second Circuit in <u>Crosby</u> as follows:

We think it advisable to refer to a sentence that is neither within the applicable Guidelines range nor imposed pursuant to the departure authority in the Commission's policy statements as a "non-Guidelines sentence" in order to distinguish it from the term "departure." A "departure," in the jurisprudence of the mandatory Guidelines regime, meant a sentence above or below the applicable Guidelines range when permitted under the standards governing departures. A "departure" was not a sentence within the applicable Guidelines range, but it was nonetheless a "Guidelines sentence," *i.e.,* imposed pursuant to the departure provisions of the policy statements in the Guidelines, as well as the departure authority of subsection 3553(b)(1).

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Even the most cursory of examinations of the facts regarding Mr. Vargas-Cuenca, in light of these factors, leads to the conclusion that the requested sentence is the most appropriate.

<u>MR. VARGAS-CUENCA'S HISTORY AND CHARACTER</u>

The facts of this case are that Mr. Vargas-Cuenca is a good man who made an extremely bad choice in associating himself with Mr. Molina-Triana. In doing so he betrayed himself and everything he spent his entire life trying to accomplish. (See letter from Mr. Vargas-Cuenca attached hereto as Exhibit "C") He is certainly guilty of participating in the charged conspiracy but Mr. Vargas-Cuenca is not your typical drug dealer and should not be viewed as one. He is a foolish man who chose to play with fire and now is in fear of destroying everything he has spent his entire adult life building.

Mr. Vargas-Cuenca had a distinguished 21 year and eight month career with the Colombian National Police. (See official Curriculum Vitae attached hereto as Exhibit "D") It reflects that he was awarded 34 medals and seventy-one commendations. He was responsible in part for disrupting Pablo Escobar's operation in Cartagena, Colombia in the early nineties. In response to his activities Mr. Escobar offered him a $3,000,000.00 bribe that he rejected. Such rejection earned him the wrath of Mr. Escobar and he, along with his entire family, were secreted out of Colombia and relocated to France until Mr. Escobar was brought to justice.

He has been married to Sonia Perdomo-Escobar his entire adult life and they raised three beautiful children within a tightly knit, loving family environment. (See letter from wife and children along with their official translation annexed hereto as Exhibit "E"). The children are all very good

students achieving great success in their educational endeavors. (See letter from Principal of their High school with official translation annexed hereto as Exhibit "F")

Everything in Mr. Vargas-Cuenca's background belies his involvement in this conspiracy. This was a hard working family man bent on raising his children in the proper manner and ensuring that they had a stable home. He has been a man of respect and honor his entire life who is held in high esteem by his friends and colleagues. (See letter from brother, friends and colleagues as well as their official translation annexed hereto as exhibit "G"). Unfortunately everything changed the day he was arrested.

Among the personal factors Mr. Vargas-Cuenca is asking this Court to consider is the time he endured at "Combita" Federal Penitentiary in the department of Boyaca, Colombia. He was arrested August 19, 2006, imprisoned there, and extradited to the United States on May 19, 2008. His entire time of incarceration in Colombia was spent at Combita.

The reason such consideration should be given is that he was held at Combita for the United States pending extradition to answer the charges for which he has now pled guilty. He did not have any other charges and would not have otherwise been held at Combita.

It is important to note that the conditions at Combita are notorious because, among other things, they do not meet the international standards for acceptable prison facilities. (See translated report annexed hereto from the Attorney General's Office in Bogota Colombia annexed hereto as Exhibit "H") This fact is supported by the findings of this Court. Specifically, on July 1, 2004, Judge Lawrence M. McKenna, U.S.D.J. held a hearing regarding Combita and concluded that the conditions there "were harsh by any American standards." Thereafter, based on these harsh pretrial detention conditions, the Court granted a one level downward departure for an individual who was incarcerated in Combita for 5 months. See U.S. v. Hermes Torres, (WL 2087818 (S.D.N.Y.). Although in the context of a downward

departure, which we are not requesting, the finding of this Court in that case is relevant because it establishes that consideration should be given for the time served at that jail while pending extradition. Mr. Vargas-Cuenca was incarcerated at Combita for 21 months awaiting his extradition to the United States for this case.

THE NEED FOR THE SENTENCE IMPOSED

As to the seriousness of the offense, from personal reflection, this case has physically and mentally destroyed his mother, brothers, wife, children and consequently Mr. Vargas-Cuenca. Although he did participate in this conspiracy, there is no question that the interest he has shown in his defense and the initiative he has demonstrated, speak to a man who is aware of both the gravity of the situation and the respect that such a situation demands.

As to 2(b)(c) & (d) the requested sentence of time served will:

1)   provide more than adequate deterrence since he, by every action he has taken since his arrest as well as by his demeanor before this Court, has demonstrated that he will never again act without considering the ramification of those action regardless of the fact that friendship may be a motivating factor;

2)   protect the public from further crimes for the same reason; and

3)   will give Mr. Vargas-Cuenca the education he obviously needed to understand the risks associated with trusting friendship alone, without applying common sense, in every aspect of his life.

AVOIDANCE OF UNWARRANTED SENTENCE DISPARITIES

Also the requested sentence is within the range of sentences meted out by this Court and therefore by imposing such sentence, this Court will avoid "avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct." Specifically, this Court has handed out the following sentences in this case:

1) Humberto Avila pled to a level 33, the same as Mr. Vargas-Cuenca, which dictates a minimum sentence of 135 months of incarceration and he received a sentence of 57 months. On information and belief he was a police officer at the airport and therefore directly responsible for the passage of the drugs through the airport;

2) Juan Carlos Cardona also pled to a level 33, and he received a sentence of 48 months. On information and belief he was the contact with the police officers who were bribed regarding the shipment of the drug;

3) Hector Jesus Espinel-Cardoza also pled to a level 33, and he received a sentence of 70 months. On information and belief he was the nexus between Arias Valencia and Molina-Triana, was an active participant in the conspiracy and had certain decisional authority regarding the same; and

4) Jorge Plazas-Silva also pled to a level 33, and he received a sentence of 36 months. On information and belief he was a police officer at the airport and therefore directly responsible for the passage of the drugs through the airport. Further, he recruited Humberto Avila into the conspiracy.

Based on the forgoing it is respectfully submitted that the requested sentence of time served is within the range of sentences meted out by this Court in reference to similarly situated or even more involved co-conspirators in this case. Hence why the requested sentence of time served is most appropriate.

Fortunately, this Court is no longer constrained to rubberstamp the sentence dictated by the Guidelines. Instead this Court is now empowered to look at all the factors surrounding this defendant. It is respectfully submitted that when all the factors are weighed, Mr. Vargas-Cuenca should be

sentenced to no more than time served and therefore we ask that you impose such a non-Guidelines sentence upon him.

### DEFENDANT'S REMORSE, ATTITUDE AND OUTLOOK

Having spent almost twenty-eight months worrying about his life and the mistakes he has made, Mr. Vargas-Cuenca now fully acknowledges not just full responsibility for his actions but, of equal importance, the wrongfulness of his ways. Mr. Vargas-Cuenca's lapse in judgment has destroyed almost everything he spent a lifetime creating. The effect has been extremely traumatic upon him and his family members. Regardless, as demonstrated by his conduct with the government since the time of his arrest, Mr. Vargas-Cuenca has learned the lessons to be learned from his lapses and errors.

More significantly, he has witnessed first-hand the suffering he brings upon himself and his family because of what he has done. Fortunately, with the continuous, unwavering support of his family and friends, there is every reason to believe that Mr. Vargas-Cuenca will never again stray from his law-abiding life. He truly is in the position where he has everything to gain by continuing in the positive avenues he has paved for himself and everything to lose by straying from those very same paths.

In view of his accomplishments thus far, I submit to this Court that Mr. Vargas-Cuenca has established his entitlement to the benefit of any doubt as to the sincerity of his strides toward reestablishing his completely law abiding life. He is strongly deserving of whatever consideration, latitude and benefits this Court may confer within the sentencing framework.

Clearly, by his actions subsequent to his participation in his crime of conviction, he has already demonstrated his resolve to more fully consider the ramifications of his actions regardless of the circumstances. He is a remorseful individual who has learned from his past indiscretions. His presence in society is not likely to pose the prospect of any harm or danger. Hence, this situation more than justifies a sentence that would encompass the imposition of a sentence of time served.

## CONCLUSION

For the foregoing reasons, Mr. Vargas-Cuenca urges this Court to impose a sentence that would encompass no incarceration and thereby permit his continued significant, and law abiding participation in society. The imposition of a sentence of time served will safeguard society, deter Mr. Vargas-Cuenca, and most importantly rehabilitate an important contributor to our society. Such a sentence clearly recognizes the unique, compelling and mitigating circumstances surrounding Mr. Vargas-Cuenca.

Respectfully submitted,

Cardenas & Associates

*J. R. Cardenas*
By: J. ROBERTO CARDENAS
Federal I.D. JC2576
Attorney for Defendant
Yesid Vargas-Cuenca

JRC:gmp:nb

cc: Marc Berger, Esq.
　　Assistant United States Attorney
　　Southern District of New York